WILLIAM BUTLER, as Administrator of the Estate of WALTER BUTLER, Deceased, Appellant, *v.* ROBINS DRY DOCK AND REPAIR COMPANY, Respondent. -

Maritime tort — the terms "floating dock" and "graven dock" defined and distinguished — accident to workman engaged in repairing vessel in graven dock held to be within navigable waters — negligence which caused such accident held to be maritime tort — when action thereupon within admiralty jurisdiction — Workmen's Compensation Law has no application.

1. A tort occurring upon a vessel floating in navigable waters is maritime in its nature and an accident occurring upon a vessel resting in a dock floating in such waters would be a maritime tort.

2. A vessel floated into what is known as a graven dock is still in navigable waters even though the water has been temporarily withdrawn, and such dock is to be regarded as navigable water instead of land.

3. A " graven dock " is distinguished from a floating dock in that the former is permanently attached to and in that manner a part of the land. An ocean-going vessel for the purposes of repair had been floated into and was then resting in such a dock projecting into navigable waters. The intestate, standing on the bottom of the dock, had been engaged in fastening plates on the outside of the vessel. Having completed the particular operation in which he had been engaged he started to go up the side of the dock for the purpose of getting bolts and a drink of water preparatory, it is assumed, to continuing his repair work. While he was still under the bulge of the upper part of the vessel and a few feet from the place where he had been working a plate from the side of the vessel dropped upon him and caused his death. The intestate was constructively standing in navigable waters when the plate fell and caused his death. His employment was not terminated or changed because he had stepped away for a few steps to do something which was connected with or incidental to his main employment, it not appearing that there was intended any permanent discontinuance of his employment. Hence the negligence charged constituted a maritime tort which is the subject of admiralty jurisdiction and the Workmen's Compensation Law is not the appropriate means of relief.

*Butler* v. *Robins Dry Dock & Repair Co.*, 209 App. Div. 882, reversed.

(Argued January 27, 1925; decided February 25, 1925.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 13, 1924, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*James A. Gray, William S. Butler* and *Sylvester Sabatino* for appellant. A dry dock of any type, when occupied by a ship undergoing repairs, is a part of the navigable waters and constitutes a place or locality which is subject to the admiralty jurisdiction. (*Grant-Smith-Porter Co. v. Rhode,* 257 U. S. 469; *State Industrial Comm.* v. *Nordenholt,* 259 U. S. 567; *The Robt. W. Parsons,* 191 U. S. 17; *Thames Towboat* v. *Francis McDonald,* 254 U. S. 242; *Danielson* v. *Morse Drydock & Repair Co.,* 235 N. Y. 439; *Matter of Doey* v. *Howland & Co.,* 224 N. Y. 30; *Danielson* v. *Morse D. D. & R. Co.,* 235 N. Y. 439; *The Anglo-Patagonian,* 235 Fed. Rep. 92; *Lord* v. *Ledwich,* 242 U. S. 635.)

*Paul Koch* and *A. G. Maul* for respondent. A graven dry dock which is neither capable of, nor designed for navigation, and which is not afloat on the water, is not a locality or place which is subject to admiralty jurisdiction whether occupied by a vessel undergoing repairs or not. (*The Plymouth,* 70 U. S. [3 Wall.] 20; *Ex Parte Phœnix Ins. Co.,* 118 U. S. 610; *Danielson* v. *Morse D. D. & R. Co.,* 235 N. Y. 439; *The Neshaminy,* 220 Fed. Rep. 182; *The Gulf Port,* 243 Fed. Rep. 676; *The General Smith,* 4 Wheat [U. S.] 438; *The Vigilant,* 151 Fed. Rep. 747; *Campanile* v. *Morse D. D. & R. Co.,* 205 App. Div. 480.)

HISCOCK, Ch. J. This action was brought by the plaintiff to recover damages for the death of his intestate claimed to have been caused by the negligence of the defendant. The case presents the question whether or

not this negligence constituted a maritime tort which was the subject of admiralty jurisdiction and which, therefore, the State could not bring under our Workmen's Compensation Act as affording the appropriate and only means of relief. Thus far the courts have held that it was not a maritime tort, and that the sole remedy must be found under the provisions of the aforesaid statute and that this action cannot be maintained. The action was dismissed solely for that reason. We reach the conclusion that the views which have thus far prevailed are erroneous.

The facts which surrounded and constituted the accident and which present the question are as follows:

An ocean-going vessel for the purposes of repair had been floated into and was then resting in what is called a "graven dock" projecting into navigable waters. A graven dock is distinguished from a floating dock in that the former is permanently attached to and in that manner a part of the land. When such a dock is to be used for purposes of repairs to a ship, gates are opened and the ship floated into the dock. The gates are then closed and the water pumped out and the ship allowed to settle on blocks at the bottom of the dock and thus made available for purposes of repair. The intestate, standing on the bottom of the dock, had been engaged in fastening plates on the outside of the vessel. Having completed the particular operation in which he had been engaged he started to go wholly or in part up the side of the dock for the purpose of getting bolts and a drink of water preparatory, it is assumed, to continuing his repair work. While he was still under the bulge of the upper part of the vessel and a few feet from the place where he had been working a plate from the side of the vessel dropped upon him and caused his death.

In determining whether this accident constituted or was the result of a maritime tort it becomes our duty simply to interpret with accuracy, if we may, the controlling views which have been expressed by the Supreme

Court of the United States and to follow them. We think they lead to the conclusion that this was a maritime tort and that, therefore, a State Legislature could not exercise the power of confining relief therefor to the Compensation Act.

It is so well settled that we find on this appeal no dispute of the proposition that the question whether a tort is maritime or not is settled by the test of locality. (*Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52.) Unquestionably a tort occurring upon a vessel floating in navigable waters is maritime in its nature and it is also practically conceded that by extension of the reasoning applicable to such a situation, an accident occurring upon a vessel resting in a dock floating in navigable waters would be a maritime tort. (*Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479; *Danielsen* v. *Morse Dry Dock & Repair Co.,* 235 N. Y. 439.) The contention, however, is that a graven dock such as the one involved in this case is part of the land and that, therefore, when a vessel rests in such a dock from which all of the water has been drawn it is really on land and that an accident happening to a person then on the vessel and certainly to one standing on the bottom of the dock itself is not a maritime tort. We think the decisions of the Supreme Court hold the other way. We think that for the purposes of disposition of such a question as this and also somewhat as a matter of policy lest admiralty law otherwise might be robbed too much of its jurisdiction, it is settled that a vessel floated into a dock of this kind is still in navigable waters even though the water has been temporarily withdrawn. (*The Robert W. Parsons,* 191 U. S. 17; *The Steamship Jefferson,* 215 U. S. 130; *So. Pacific Co.* v. *Jensen,* 244 U. S. 205. See, also, *Anglo-Patagonian,* 235 Fed. Rep. 92; *Brandies Case,* 248 Mass. 31.)

We do not fail to note the contention of respondent's counsel that the cases of *Parsons* and *Jefferson Steam-*

*ship* (*supra*) were concerned with the decision of other questions than those arising from a tort. That of course is true. Nevertheless it seems to us that the opinions in those cases discussed from a general standpoint the question whether a ship resting in such a dock as the present one was in navigable waters or on land and that they become authoritative on the present question.

If we are right in the foregoing views then there are left for brief consideration only the details of the situation in which the intestate was at the moment when he was killed. As stated he had finished the particular operation upon the side of the vessel in which he had been engaged and had gone a few steps in the direction of getting a drink of water and seeing about some bolts. We have no doubt that within the decisions which we have cited, if we are otherwise right, an accident happening to a workman standing on a staging on the outside of a vessel or on a dock at its keel and working on the vessel is just as much a maritime tort as though the man was standing on the deck of the vessel. The controlling circumstance is that he is engaged in making repairs on a vessel regarded as being in navigable waters and the particular foothold within the limits presented by this case which he utilizes in order to establish contact with the vessel and do his work cannot be material. (*Great Lakes Dredge & Dock Co., v. Kierejewski, supra; Anglo-Patagonian, supra.*) Moreover, if for the purpose of the determination of the question now presented to us a ship is to be regarded as still in navigable water when it has been floated into and rests upon the dry bottom of such a dock as this, it must be because such dock is to be regarded as navigable water instead of land and if that is so the intestate constructively was standing in navigable waters at the time when the plate fell and caused his death.

If in view of the other circumstances that fact is material, we do not think that the employment of the

intestate was terminated or changed because he had stepped away for a few steps to do something which was connected with or incidental to his main employment, it not appearing that there was intended any permanent discontinuance of his employment. That question seems to be somewhat akin to one which we have frequently considered in connection with the application of our Workmen's Compensation Act in deciding whether a given accident arose " in the course of the employment " and we have quite uniformly held that the employment included and was not broken by a slight departure from the site of the specific operations which a man was performing for a purpose which was fairly incidental to such employment. (*Matter of Moore* v. *Lehigh Valley R. R. Co.,* 169 App. Div. 177; affd., 217 N. Y. 627.)

For these reasons we think the judgments appealed from must be reversed and a new trial granted, costs to abide event.

CARDOZO, POUND, CRANE, ANDREWS and LEHMAN, JJ., concur; McLAUGHLIN, J., absent.

Judgments reversed, etc.