## CONTINENTAL CASUALTY CO. et al. v. LAWSON, Deputy Com'r.
### No. 6684.

Circuit Court of Appeals, Fifth Circuit.
April 15, 1933.

Geo. L. Patterson and Dewey Knight, both of Miami, Fla., for appellants.

W. P. Hughes, U. S. Atty., of Jacksonville, Fla., and B. R. Cisco, Asst. U. S. Atty., of Miami, Fla., for appellee.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

BRYAN, Circuit Judge.

This is an appeal from a decree dismissing a bill to enjoin the enforcement of a compensation award which was made in reliance upon provisions of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 USCA, chapter 18. The challenged award was made by a deputy commissioner in favor of Joseph I. Roberts, who was injured while repairing the Elsie D., a small tugboat of less than five tons net. At the time of injury the boat was on a marine railway, by means of which it had been theretofore removed for repairs from the navigable waters of the Miami river. Roberts was doing the repair work under employment by the owner of the boat. He was a first-class carpenter, but did not have a steady job. During the winter months he was able to secure reasonably regular employment in a boatyard, but during the dull summer season he was usually laid off with other carpenters. The deputy commissioner found that during the year immediately preceding the date of injury he had been paid by one employer about $500, and by two others small amounts which were not stated; but the award was based on the annual earnings, amounting to $1,700, of another employee of the same class whose employment was practically continuous. The appellants are the owner of the boat and the insurance carrier. Their main contention is that the injury was not covered by the act, because it occurred on a marine railway. They also make the minor contention that the deputy commissioner, even if he had jurisdiction to award compensation, made an excessive award and one founded upon an erroneous theory.

The "coverage" of the act is found in section 3 (a), 33 USCA § 903 (a), which, in so far as is material here, is as follows: "Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

SIBLEY, Circuit Judge, dissenting.

The words in parenthesis also appear in section 2 (4) (33 USCA § 902 (4), where the term "employer" is defined. The important question is whether the words "any dry dock" are intended to include a marine railway. That question has been answered in the negative by the District Court for the Eastern District of Virginia in Colonna's Shipyard v. Lowe, 22 F.(2d) 843, 844, and by the Circuit Court of Appeals for the Third Circuit, Judge Woolley dissenting, in Norton v. Vesta Coal Co. (The Warren Elsey) 63 F. (2d) 165, 166. So far as we are advised there has been no other decision directly in point, except the decision of the court below in this case. The opinion in the Lowe Case proceeds on the theory that recovery was there sought for a maritime tort; and, after citing among others the cases of Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, and Millers' Indemnity Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470, in support of the proposition that state compensation laws may validly provide exclusive relief even in cases involving maritime torts, provided the application of the local law does not necessarily work "material prejudice to any characteristic feature of the general maritime law," that opinion held that, "since the vessel and the railway on which she was drawn were then both on high land, and the injury was sustained under those conditions, the tort was nonmaritime," the Virginia Compensation Act rather than the federal act was exclusively applicable. In the case of the Warren Elsey the majority opinion, insisting upon a strict construction of the term "dry dock," holds that it would be mere speculation to impute to Congress an intention "to include something it did not say it included." Notwithstanding these two decisions, we feel obliged to agree to the dissenting opinion in the later case of Judge Woolley, and to adopt a more liberal interpretation of the phrase, as he correctly quotes it, "any dry dock."

It was within the power of Congress to extend to employees working on marine railways the same right to compensation for injury received in the course of their employment that it admittedly has provided for employees working on floating and graven dry docks. Indeed, in North Pacific Steamship Co. v. Hall Brothers, 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510, a marine railway in a shipyard was referred to as a dry dock, and it was said that the nature of the service was the same whether repairs were made while the vessel was afloat, or in dry dock, or hauled up on a marine railway. The doubt previously intimated in The Robert W. Parsons, 191 U. S. 17, at pages 33 and 34, 24 S. Ct. 8, 48 L. Ed. 73, was there resolved in favor of the admiralty jurisdiction over marine railways in cases depending upon contract. In State Industrial Commission of State of New York v. Nordenholt Corp., 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, it was said that an award under a state compensation law is not made on the theory that a tort has been committed, but that the law under which such an award is made is read into and becomes a part of the contract of employment between employer and employee. And the same is true of an award made pursuant to the act under consideration, which "within its sphere * * * was designed to accomplish the same general purpose as the Workmen's Compensation Laws of the states." Crowell v. Benson, 285 U. S. 22, 40, 52 S. Ct. 285, 288, 76 L. Ed. 598. The question whether jurisdiction over a maritime tort could be asserted under the compensation laws of the states, or existed exclusively in admiralty, was an important one when the decisions were rendered in the Rohde, the Braud, and other similar cases referred to in Colonna's Shipyard Co. v. Lowe, supra; but since the passage of this act the importance of that question has largely disappeared. Before its passage, recovery for injuries to longshoremen and harbor workers could be had only for maritime torts. Since its passage, compensation is awarded in case of injury regardless of the fault or negligence of employer, employee, fellow servant, or of assumed risk. Congress did not adopt a compensation act of its own until after it had unsuccessfully attempted in 1917 and 1922 to authorize recovery under state compensation laws, as well as under the ancient provision of the Judiciary Act of 1789 (1 Stat. 73), "saving to suitors," in addition to the right to invoke the admiralty and maritime jurisdiction, "the right of a common law remedy, where the common law is competent to give it." The acts of 1917 and 1922 were both held by the Supreme Court to be unconstitutional because they undertook to delegate the power of Congress to the states, and, in violation of article 3, § 2, of the Constitution, to interfere with the power of federal courts over cases within the admiralty and maritime jurisdiction; that of 1917 (40 Stat. 395) in Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; and that of 1922 (42 Stat. 634 [28 USCA §§ 41 (3), 371]) in Washington v. W. C. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302,

305, 68 L. Ed. 646. In the opinion in the last-cited case, decided in 1924, it is said: "Without doubt Congress has power to alter, amend, or revise the maritime law by statutes of general application embodying its will and judgment. This power, we think, would permit enactment of a general Employers' Liability Law or general provisions for compensating injured employees; but it may not be delegated to the several states." In response to this suggestion, Congress in 1927 enacted the Longshoremen's and Harbor Workers' Compensation Law.[1] The elaborate provisions of the Act, viewed in the light of prior Congressional legislation as interpreted by the Supreme Court, leaves no room for doubt, as it appears to us, that Congress intended to exercise to the fullest extent all the power and jurisdiction it had over the subject-matter. The liability of an employer who makes provision to secure compensation to his employees is exclusive of all other liability that might be asserted by them against him. State compensation laws and this compensation law of Congress are mutually exclusive of each other. The existence of the act of 1927 must be taken into consideration and given effect in determining whether under section 3 (33 USCA § 903) thereof the compensation laws of the states are valid and applicable; for state laws cannot now validly apply to a subject-matter over which Congress has exercised its exclusive jurisdiction. In our opinion it was not the intention of Congress to provide compensation for harbor workers only while they were working on ships that had been placed on floating or graven docks and to deny compensation if the same employees happened to be repairing a vessel on a marine railway. Such workmen might have been engaged on the same day in all three classes of work, since it is not unusual in a large shipyard for employers to use all three methods of taking ships out of the water for the purpose of repairing them during the same day or even at the same time. The act does not undertake to provide compensation for injuries occurring on the ordinary dock or wharf used in loading and unloading cargo, doubtless because in the opinion of Congress, either this kind of dock, being an extension of the land, was exclusively within the jurisdiction of the states, Cleveland Terminal & V. Co. v. Cleveland S. S. Co., 208 U. S. 316, 28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215; State Industrial Commission of State of New York v. Nordenholt Corp., supra; Smith v. Taylor, 276 U. S. 179, 48 S. Ct. 228, 72 L. Ed. 520; or because the Act would not apply to most cases of injury to longshoremen who usually are employed to work on the dock or wharf not by the shipowners but by independent contracting stevedores. The use of the phrase "including any dry dock" in section 3 discloses also an intention to exclude the ordinary cargo dock or wharf; to distinguish between the making of repairs to ships and the handling of cargo on shore; to assume jurisdiction over the former but not over the latter class of work. It is faintly suggested that the owner of the boat acted in the capacity of master in hiring Roberts, the employee who was injured; and that, since section 3 (a) (1) prohibits payment of compensation on account of injury sustained by an employee engaged by the master to repair vessels under 18 tons net, the deputy commissioner was without jurisdiction to make an award. A complete answer to this suggestion is that the boat had no master. The obvious purpose of the subsection is to prevent the master of a small vessel from creating a liability against the owner. That provision does not apply in the event the owner himself makes the contract of employment. The district judge in our opinion correctly held that the deputy commissioner had jurisdiction to make an award.

■ The deputy commissioner correctly found that the amount of the award should be determined under § 10 (c), 33 USCA § 910 (c), since the employee was unable to secure employment during substantially the whole of the year immediately preceding his injury. But instead of basing his award on the earnings of the claimant, the deputy commissioner based it upon the higher earnings of an employee of the same class who enjoyed regular employment. We think this was error, and that the earnings of the claimant himself and not of another employee must be used in arriving at the amount of compensation to be allowed. "Earning capacity," as used in this subsection, means willingness to work considered in connection with opportunity to work. Andrew F. Mahony Co. v. Marshall (D. C.) 46 F.(2d) 539; Baltimore & O. R. R. Co. v. Clark (C. C. A.) 59 F.(2d) 595. Because, and only because, of this error in the method of determining the amount of the award the decree will have to be reversed.

Accordingly, the decree is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

---

[1] The reports of the committees of both Houses are copied in a footnote to the opinion in Crowell v. Benson, 285 U. S. 22, at pages 40 and 41, 52 S. Ct. 285, 76 L. Ed. 598.

SIBLEY, Circuit Judge (dissenting).

I think the compensation order should be enjoined because the deputy commissioner is without jurisdiction over the accident. The small vessel under repair was not on a marine railway in a fair sense, but on a shipyard. She was off the inclined track which leads to the water and on a level side track 8 feet to one side of the marine track and 120 feet from the water at high tide. Water had never been and was never expected to be where she was. The place was not within the ebb and flow of the tide, but was true land and cannot be included in navigable waters. Had the vessel been upon the marine railway proper the same thing would have been true. While the railway is used as a substitute for a dry dock, and a ship thereon is sometimes said to be in dry dock, and while in North Pacific S. S. Co. v. Hall Brothers, 249 U. S. 119, 39 S. Ct. 221, 222, 63 L. Ed. 510, Justice Pitney called it a dry dock, first on page 123 with conscious inaccuracy indicated by quotation marks, nevertheless it is not a dock of any sort. According to the dictionaries and careful literature, a dock is *water* for the reception of a ship, usually adjacent to wharves which by an extension of the term are also spoken of as docks. Webster's International Dictionary; City of Boston v. Lecraw, 17 How. at page 434, 15 L. Ed. 118. The ship docks when she enters this water, and ties up to the wharf. The wet dock is fitted with gates to keep the water in and the vessel afloat when the tide goes out. A dry dock is fitted with gates to keep the water out after the tide has receded or the water has been pumped away so that the ship may be worked on within it. A floating dry dock is a submerged vessel for the reception of the ship which by pumping is raised and the ship in it lifted. In all of these the ship floats in and floats out. They are in a fair sense navigable waters. The marine railway is as old as Greek civilization. There was an ancient one across the Isthmus of Corinth. A modern one is described in The Professor Morse (D. C.) 23 F. 803, where an injury to its submerged end was held nonmaritime. No one until recently contended that its land end was navigable waters. Injuries to persons on vessels in a dry dock whether graven or floating are held to be in admiralty jurisdiction because on navigable waters. Gonsalves v. Morse Dry Dock Co., 266 U. S. 171, 45 S. Ct. 39, 69 L. Ed. 228; Butler v. Robins Dry Dock Co., 240 N. Y. 23, 147 N. E. 235; O'Hara's and Brandeis' Cases, 248 Mass. 31, 142 N. E. 844, 847. In the last citation Chief Justice Rugg said: "Whether the dry dock is floating or resting upon and attached to land is an immaterial factor in view of these decisions. The essential factor is that the vessel floats into it." Emphasis is laid on the entry of the vessel by floating in The Jefferson, 215 U. S. at page 142, 30 S. Ct. 54, 54 L. Ed. 125, 17 Ann. Cas. 907. Injuries on the wharf, even to a seaman or a stevedore, though they are under maritime employment, are not on navigable waters but on the land and are under land law. State Industrial Commission of State of New York v. Nordenholt Corp., 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Smith v. Taylor, 276 U. S. 180, 48 S. Ct. 228, 72 L. Ed. 520; The Montezuma (C. C. A.) 19 F.(2d) 355. An injury occurring upon the land end of a marine railway occurs on land and is not a maritime tort. Colonna's Shipyard v. Lowe (D. C.) 22 F.(2d) 843; Giske v. Austrem (Wash. Super. Ct.) 1931 A. M. C. 1200. These cases seem to mark the first contention that a marine railway is navigable waters. The decisions in The Robert W. Parsons, 191 U. S. 17, 24 S. Ct. 8, 48 L. Ed. 73, and North Pacific S. S. Co. v. Hall Bros., 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510, go only to the point that a contract to repair a launched ship is a *maritime contract* whether she be afloat or not. They ruled nothing touching injuries. A carpenter working under such a contract, like a seaman or a stevedore, if injured on the wharf or on other land must have sought redress under the state laws.

Congress first tried, but unavailingly, to bring harbor workers under state compensation laws, although injuried on navigable waters. The effort failed because injuries on navigable waters belong to admiralty. Washington v. W. C. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646. But by several decisions of the court state laws had been allowed effect on navigable waters when not injurious to the harmony and uniformity of maritime law. Millers' Underwriters v. Braud, 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470; Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008. To resolve the resulting uncertainty was one aim of the present Longshoremen's and Harborworkers' Act. Its coverage section 3 (33 USCA § 903) extends only to "disability or death [which] results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." The last clause indicates, not an effort to restrict state compensation acts, but

to so divide jurisdiction that every injury will or may fall under either a state or federal compensation act. But the clause does not mean that the federal act will have a greater scope where state compensation laws are narrow or nonexistent. That the state of Florida has no compensation act will not bring an injury within the federal act if it would not be in New York or Massachusetts. I think a definite, uniform line of cleavage was intended to be laid down, conforming to the previously familiar admiralty jurisdiction over injuries, to wit, that injuries occurring on navigable waters should come under the federal act and those occurring on land should be dealt with under state laws. Dry docks that are dry docks were mentioned to avoid any doubt of the correctness of the decisions that though sometimes dry they are navigable waters, because the ship floats in and out of them.

It is to be noted that the federal act is not a compensation law of the elective sort, which by the consent of the contracting parties becomes a part of their contract. Under such optional acts the compensation is due because the employer agreed to pay it. Ford, Bacon & Davis, Inc., v. Volentine (C. C. A.) 64 F.(2d) 800. If the employment be a maritime contract, its obligations may therefore be enforced in admiralty irrespective of the place of the injury which ripens the contractual obligation to pay. North Pacific S. S. Co. v. Hall Bros., 249 U. S. 119, 39 S. Ct. 221, 63 L. Ed. 510. But the federal act, by section 4 (33 USCA § 904), is plainly compulsory, applying independently of the consent of either employer or employee. And the act operates not only on employer and employee but expressly displaces the rights of third parties who because of the injury or death have claims for damages, whether at law or in admiralty. Section 5 (33 USCA § 905). It is an exertion of power in the maritime sphere like the police power on land. The Congress in its authority over the sea cannot intrude upon the authority of the states over the land with any greater propriety than the states can intrude upon the sea. The reasoning which avails to keep state compensation statutes from applying to maritime injuries avails to prevent the application of an admiralty compensation statute to injuries on land. The place of their occurrence, regardless of the nature of the employment in which they occurred, whether as seaman, stevedore or ship's carpenter, has always served to mark the boundary of jurisdiction. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R.

A. (N. S.) 1157; Gonsalves v. Morse Dry Dock Co., 266 U. S. 172, 45 S. Ct. 39, 69 L. Ed. 228; State Industrial Commission of State of New York v. Nordenholt Corp., 259 U. S. at page 272, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; Grant Smith-Porter Co. v. Rohde, 257 U. S. at page 476, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008. If a ship on a side track of a marine railway and 120 feet from the water is within the act, one at any point to which she may be carried is, for there is no legal distinction to be drawn. An extension of the act by construction to marine railways and shipyards would at least raise a serious question of constitutional power which can be avoided by giving the words used their plain meaning. By including in navigable waters "any dry dock" Congress only included places that can fairly be held and have been held to be navigable waters; places into and out of which ships float in water. Congress did not say and did not mean marine railways and shipyards. When in legislating as to the maritime services and supplies that should give rise to a lien on ships they desired to include the services of a marine railway along with those of dry docks because similar, they used *both terms* in their well-understood and proper meanings. 46 USCA §§ 971, 972. If Congress in this act could have covered injuries to harbor workers occurring on land, I think they intentionally did not. Injuries happening about the repair of a ship on permanently dry land are under the law of the land and are not controlled by this compulsory act of Congress.