## MARYLAND CASUALTY CO. et al. v. LAWSON, Dep. Com'r.

### No. 8850.

Circuit Court of Appeals, Fifth Circuit.

Feb. 13, 1939.

E. B. Kurtz, Wm. L. Reed, and R. E. Sappenfield, all of Miami, Fla., for appellants.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Wm. A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla., for appellee.

Before FOSTER, HOLMES, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from a judgment dismissing, on motion, a bill to set aside an award by a deputy commissioner under the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq. The entire record before the Commissioner was made part of the bill as an exhibit. Additional evidence was not taken in the District Court.

The following facts are undisputed: Richard Wilton Lowe was employed in the work of repairing a vessel that had been drawn up out of the water on a marine railway, operated by United Dry Dock, appellant, at Miami, Fla. On Feb. 18, 1936, while so engaged he was assaulted and seriously injured by a fellow employee. He brought proceedings before the deputy commissioner, appellee, to recover compensation.

The deputy commissioner found that Lowe left the side of the boat where he was working, in order to go forward on the boat and continue the work at another location; and that he was assaulted while still upon the foundation part of the marine railway.

Appellants challenge this finding and allege the evidence shows the assault occurred on land adjacent to the marine railway. We consider that immaterial as the land was a part of the yard necessary to the operation of the marine railway. Furthermore, there was sustantial evidence to support the deputy commissioner's finding on this point and we are content to accept it.

The Act, 33 U.S.C.A. § 903, provides:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *"

Appellants contend that a marine railway is not a dry dock within the meaning of the law, relying upon Norton v. Vesta Coal Co., 3 Cir., 63 F.2d 165, and Rohlfs v. Dept. of Labor and Industries, 190 Wash. 566, 69 P.2d 817, which are in point but not controlling. We held to the contrary in Continental Casualty Co. v. Lawson, 5 Cir., 64 F.2d 802, and decided that a marine railway is to be considered a dry dock within the meaning of the statute. Our decision finds support in Butler v. Robins Dry Dock & Repair Co., 240 N.Y. 23, 147 N.E. 235, in which it was held that a workman injured while engaged in repairing a vessel in a graving dock was constructively on navigable waters when the accident occurred.

Technically, a dry dock is a watertight basin which after pumping out allows examination and work upon the bottom of a vessel. A graving dock, except for details of construction, is the same. A floating dock receives a vessel when the dock is submerged, after which the watertight compartments of the dock are pumped out and the buoyancy of the dock raises the vessel. A marine railway is an inclined structure at the water's edge which extends below the water. It carries a cradle which moves on rollers or wheels. The cradle runs below the water and receives the vessel which is then hauled out. Bradford, Glossary of Sea Terms, "Dry Dock," "Railway."

In enacting the Longshoremen's and Harbor Workers' Compensation Act it was clearly the intention of Congress to give the same rights and remedies to those employed in work of a maritime nature as are enjoyed by other workers under the provisions of state workmen's compensation acts. The act is to be liberally construed to effect its purpose. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 409, 52 S. Ct. 187, 76 L.Ed. 366.

In construing the act we are not bound by technical definitions but must interpret it by giving to the words used their ordinary meaning. Courts of admiralty may take notice of terms in general use in maritime affairs. Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200. In nautical parlance "dry dock," "floating dock" and "marine railway" are interchangeable terms. Necessarily, all are located on navigable waters and used for exactly the same purposes, i. e., to raise a ship out of the water to permit examination and repairs to her hull which are impossible while she is afloat. A ship's master speaks of "dry docking" his vessel regardless of which method is to be used. That

734

the words have a common meaning is illustrated by this case. Although operating a marine railway, appellant calls itself a dry dock.

There are few dry docks, technically considered, in the United States. Floating docks or marine railways or both are to be found at every seaport. It must be presumed that Congress intended to protect the great majority of laborers employed on floating docks and marine railways as well as the comparatively few workmen employed on what are to be technically considered dry docks. We entertain no doubt that in extending the law to cover "any dry dock" Congress intended to include marine railways. Cf. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, and Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254.

We do not find the authorities relied upon by appellants persuasive and prefer to adhere to our former ruling in Continental Casualty Co. v. Lawson, supra.

The record presents no reversible error. Affirmed.