Angel Torres et al., Appellants, v City of New York et al., Respondents and Third-Party Plaintiffs-Respondents. Coastal Dry Dock & Repair Corp., Third-Party Defendant-Respondent.

Second Department, February 24, 1992

### APPEARANCES OF COUNSEL

*Schneider, Kleinick & Weitz, P. C. (Brian J. Shoot, Ivan S. Schneider* and *Gary Ehrlich* of counsel), for appellants.

*O. Peter Sherwood, Corporation Counsel (Kristin M. Helmers* and *Margaret G. King* of counsel), for City of New York, respondent.

*Morris & Duffy (Irwin H. Haut, Patricia D'Alvia* and *Joseph T. Glynn* of counsel), for Brooklyn Navy Yard Development Corporation, third-party plaintiff-respondent.

*Marchisello & Doody (Herzfeld & Rubin, P. C. [Herbert Rubin* and *David B. Hamm]* of counsel), for Coastal Dry Dock & Repair Corp., third-party defendant-respondent.

### OPINION OF THE COURT

BRACKEN, J.

■ ■ In determining whether or not this personal injury action falls within Federal maritime jurisdiction, we must resolve two issues. First, we must decide whether the wrong "occurred on navigable waters" *(Executive Jet Aviation v City of Cleveland,* 409 US 249, 253). Second, we must assess whether there is "some relationship between the tort and

traditional maritime activities" *(Executive Jet Aviation v City of Cleveland, supra,* at 256; *see also, Sisson v Ruby,* 497 US 358, 110 S Ct 2892; *Foremost Ins. Co. v Richardson,* 457 US 668). Our decision as to the first issue proceeds from our conclusion that the Supreme Court of the United States has neither explicitly nor implicitly overruled the holding of the New York State Court of Appeals, announced in *Butler v Robins Dry Dock & Repair Co.* (240 NY 23), that a "graven dock", similar to the one in the present case, "is to be regarded as navigable water instead of land" *(Butler v Robins Dry Dock & Repair Co., supra,* at 27). We decide the second issue by referring to a substantial body of State and Federal case law which holds that the making of repairs to a ship is a traditional maritime activity *(Executive Jet Aviation v City of Cleveland, supra).* We therefore conclude that the present case falls within Federal maritime jurisdiction and that the provisions of the New York State Labor Law may not be applied.

I

On September 8, 1983, the third-party defendant Coastal Dry Dock & Repair Corp. (hereinafter Coastal) was engaged in the repair of the U.S.S. *Stump,* a United States warship. As described by the plaintiffs' counsel in his opening, the "dry dock" in which these repairs were being made consisted of an enclosure containing sea water, into which the ship was floated, and from which the water was later drained.

The repairs to the U.S.S. *Stump* were being carried out in what is alternatively described as a "graven dock" *(see, Butler v Robins Dry Dock & Repair Corp., supra)* or a "graving dock" *(see, e.g., O'Leary v Puget Sound Bridge & Dry Dock Co.,* 349 F2d 571 [9th Cir]). According to a document prepared by the Department of the Navy, Bureau of Yards and Docks, quoted in *O'Leary (supra,* at 573), a " 'graving drydock is a permanently fixed basin with entrance enclosures constructed at or near the water's edge into which a ship can be floated and which can be pumped dry of water' ". This allows the exposure of those areas below the ship's water line which are in need of repair.

The repairs being made to the U.S.S. *Stump* necessitated the removal of a propeller bearing. While the bearing was being removed, an eyebolt, which had been used to connect the bearing to a land-based crane, snapped, causing the bearing to swing into a scaffold. The scaffold collapsed, and three

Coastal employees, Angel Torres, Rene Jeantine, and Emile Rousseau, fell to the floor of the dock, sustaining personal injuries. These men were, at the time of this incident, standing on the scaffold approximately 35 feet above the floor and under the stern of the U.S.S. *Stump.*

These workers and their wives brought the instant action against the defendant City of New York, as owner of the property where the accident occurred, and against the Brooklyn Navy Yard Development Corporation, as the holder of a long-term lease of the property. These parties were concededly free of negligence, and would be liable, if at all, only pursuant to the provisions of Labor Law §§ 240 and 241. The evidence tends to support the conclusion that the accident was due entirely to the negligence of the third-party defendant Coastal, the employer of the injured plaintiffs. However, Coastal is immune from liability to the plaintiffs pursuant to the terms of the Longshore and Harbor Workers' Compensation Act *(see,* 33 USC §§ 901, 905 [a]), and the plaintiffs have not directly sued Coastal.

The present appeal is from an order of the Supreme Court, Kings County (Vaccaro, J.), which, after a jury trial, vacated its prior ruling granting the plaintiffs judgment as a matter of law on the issue of liability, and granted the motions of the defendants and the third-party defendant for summary judgment dismissing the plaintiffs' complaint. The Supreme Court held that the Labor Law may not be applied in this case, because it has been preempted by Federal law, i.e., the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.).* We affirm on a different ground, to wit, that the plaintiffs' action is governed by traditional Federal maritime law.

## II

United States Constitution, article III, § 2, clause (1), provides that "[t]he judicial Power [of the courts of the United States] shall extend * * * to all Cases of admiralty and maritime Jurisdiction". This provision of the Constitution has been implemented by 28 USC § 1333 (1), which states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled". The maritime jurisdiction of the Federal courts was further defined by

Congress in the Admiralty Jurisdiction Extension Act of 1948 (46 USC, Appendix § 740) which states that "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land". The "saving to suitors" clause contained in 28 USC § 1333 (1) permits State courts to adjudicate admiralty claims, provided that they apply Federal maritime law *(see, Offshore Logistics v Tallentire,* 477 US 207, 223; *Garrett v Moore-McCormack Co.,* 317 US 239; *Lerner v Karageorgis Lines,* 66 NY2d 479; *Ugarte v United States Lines,* 64 NY2d 836, *cert denied* 474 US 848; *Alvez v American Export Lines,* 46 NY2d 634, *affd* 446 US 274).

The only question to be decided on this appeal is whether "admiralty [or] maritime jurisdiction" within the meaning of the foregoing statutes exists in this case. The plaintiffs recognize that "[w]ith admiralty jurisdiction comes the application of substantive admiralty law" *(East Riv. S. S. Corp. v Transamerica Delaval,* 476 US 858, 864), and they also recognize that application of substantive maritime law would require them to prove that the defendants were at fault. Being unable to prove that defendants were in any way negligent, the plaintiffs concede that the application of Federal maritime law would warrant dismissal of their complaint.

The scope of Federal maritime jurisdiction in tort cases was, until relatively recently, defined with reference to one single test, that is, a test based upon "the locality of the wrong" *(Executive Jet Aviation v City of Cleveland,* 409 US 249, 253, *supra; see also, Victory Carriers v Law,* 404 US 202, 205). According to this test, the border between State tort law jurisdiction and Federal maritime jurisdiction was as easy to trace as the border between the land and the sea. Admiralty jurisdiction encompassed only those torts which were " 'committed on the high seas, or on waters within the ebb and flow of the tide' " *(Executive Jet Aviation v City of Cleveland, supra,* at 253; *Victory Carriers v Law, supra,* at 205; *Thomas v Lane,* 23 F Cas 957, 960 [CC Me 1813; No. 13, 902]). The scope of Federal maritime jurisdiction in tort cases was later expanded to cover "not only tidewaters, but all navigable waters, including lakes and rivers" *(Executive Jet Aviation v City of Cleveland, supra,* at 253, citing *The Propeller Genesee Chief v Fitzhugh,* 12 How [53 US] 443). In contract cases, by way of contrast, Federal maritime jurisdiction has been tradi-

tionally defined not with reference to the locality of the wrong, but instead with reference to the nature of the transaction *(see, Exxon Corp. v Central Gulf Lines,* 500 US —, 111 S Ct 2071; *Grant Smith-Porter Co. v Rohde,* 257 US 469, 476; *Danielsen v Morse Dry Dock & Repair Co.,* 235 NY 439, 442, cert denied 262 US 756).

In applying the "locality of the wrong" test, the Supreme Court of the United States has consistently deemed piers and docks to be extensions of the land *(see, Victory Carriers v Law, supra,* at 206-207; *Cleveland Term. R. R. v Steamship Co.,* 208 US 316; *Johnson v Chicago & Pac. Elevator Co.,* 119 US 388; *Ex Parte Phenix Ins. Co.,* 118 US 610; *The Plymouth,* 3 Wall [70 US] 20, 36 [1865]). In accordance with this general rule, longshoremen who were injured while standing on docks generally were not entitled to compensation under Federal maritime law *(see, e.g., Victory Carriers v Law, supra; Smith & Son v Taylor,* 276 US 179; *Industrial Commn. v Nordenholt Corp.,* 259 US 263).

This general rule was modified by the Admiralty Jurisdiction Extension Act of 1948 (46 USC, Appendix § 740) which extended maritime jurisdiction to encompass injuries caused to persons positioned on the land, provided that the injury was caused by a "vessel on navigable water" *(see, Gutierrez v Waterman S. S. Corp.,* 373 US 206; *see also, Victory Carriers v Law,* 404 US 202, *supra;* Annotation, *Admiralty Extension Act,* 14 ALR Fed 664). To invoke maritime jurisdiction pursuant to this statute, "a plaintiff injured on shore must allege that the injury was caused by a defective appurtenance of a ship on navigable waters" *(Margin v Sea-Land Servs.,* 812 F2d 973, 975; *see also, Executive Jet Aviation v City of Cleveland,* 409 US 249, 260, n 8, *supra; Victory Carriers v Law, supra; Nacirema Co. v Johnson,* 396 US 212, 223; *Whittington v Sewer Constr. Co.,* 541 F2d 427; *Pryor v American President Lines,* 520 F2d 974, cert denied 423 US 1055; *Garrett v Gutzeit,* 491 F2d 228).

In the present case, the accident was caused by the improper use of an eyebolt which was not an appurtenance of the ship. Although the propeller bearing which swung into the scaffold, causing it to tip, might be considered an appurtenance of the ship, there was no defect in the bearing itself, and it cannot properly be regarded as the instrument which led to the accident. Even were it to be regarded as such, maritime jurisdiction under the Admiralty Jurisdiction Extension Act would exist only if the ship in question were itself

located on "navigable water". Thus, the first question for resolution in this case remains whether the ship and the men who were working underneath her stern were located, at the time of the accident, in an area which should be considered as an extension of the land *(see, Smith & Son v Taylor,* 276 US 179, *supra; The Plymouth,* 3 Wall [70 US] 20, *supra)* rather than as part of the "waters within the ebb and flow of the tide" *(Thomas v Lane,* 23 F Cas 957, 960 [CC Me 1813; No. 13, 902], *supra).* In short, was there a maritime "situs"?

### III

As noted above, the injured plaintiffs in this case were working in an enclosed area into which the vessel in question had been floated and from which the water was then pumped. This is essentially the same sort of "graven dock" as that which the Court of Appeals, in *Butler v Robins Dry Dock & Repair Co.* (240 NY 23, *supra),* had determined to be, in effect, an extension of the water rather than an extension of the land. Whether the holding of *Butler* is still valid is a central issue in this case. It is, therefore, important to examine closely the reasoning of the *Butler* court, as expressed in its decision. The court wrote, in part, as follows:

"It is so well settled that we find on this appeal no dispute of the proposition that the question whether a tort is maritime or not is settled by the test of locality. *(Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52.) Unquestionably a tort occurring upon a vessel floating in navigable waters is maritime in its nature and it is also practically conceded that by extension of the reasoning applicable to such a situation, an accident occurring upon a vessel resting in a dock floating in navigable waters would be a maritime tort. *(Great Lakes Dredge & Dock Co.* v. *Kierejewski,* 261 U. S. 479; *Danielsen* v. *Morse Dry Dock & Repair Co.,* 235 N. Y. 439.) The contention, however, is that a graven dock such as the one involved in this case is part of the land and that, therefore, when a vessel rests in such a dock from which all of the water has been drawn it is really on land and that an accident happening to a person then on the vessel and certainly to one standing on the bottom of the dock itself is not a maritime tort. We think the decisions of the Supreme Court hold the other way. We think that for the purposes of disposition of such a question as this and also somewhat as a matter of policy lest admiralty law otherwise might be robbed too much of its jurisdiction, it is

settled that a vessel floated into a dock of this kind is still in navigable waters even though the water has been temporarily withdrawn. *(The Robert W. Parsons,* 191 U. S. 17; *The Steamship Jefferson,* 215 U. S. 130; *So. Pacific Co.* v. *Jensen,* 244 U. S. 205. See, also, *Anglo-Patagonian,* 235 Fed. Rep. 92; *Brandies Case,* 248 Mass. 31.) * * *

"We have no doubt that within the decisions which we have cited * * * an accident happening to a workman standing on a staging on the outside of a vessel or on a dock at its keel and working on the vessel is just as much a maritime tort as though the man was standing on the deck of the vessel. The controlling circumstance is that he is engaged in making repairs on a vessel regarded as being in navigable waters and the particular foothold within the limits presented by this case which he utilizes in order to establish contact with the vessel and do his work cannot be material. *(Great Lakes Dredge & Dock Co.* v. *Kierejewski, supra; Anglo-Patagonian, supra).* Moreover, if for the purpose of the determination of the question now presented to us a ship is to be regarded as still in navigable water when it has been floated into and rests upon the dry bottom of such a dock as this, it must be because such dock is to be regarded as navigable water instead of land and if that is so the intestate constructively was standing in navigable waters at the time when the plate fell and caused his death" *(Butler v Robins Dry Dock & Repair Co., supra,* at 26-27).

In accordance with the foregoing, the court held that a tort action which arose from an off-vessel accident which occurred within the confines of a "graven dock" was governed by Federal maritime law.

The plaintiffs argue that the 1925 holding of *Butler (supra)* cannot be squared with subsequent decisions of the United States Supreme Court in cases such as *Smith & Son v Taylor (supra; see also, Victory Carriers v Law,* 404 US 202, *supra; Nacirema Co. v Johnson,* 396 US 212, *supra).* Thus, the plaintiffs invite this court to declare, in effect, that the *Butler* decision, to the extent that it holds that the confines of a "graven dock" are to be considered as equivalent to "navigable waters", has been implicitly overruled. Because the plaintiffs cite no case of the United States Supreme Court, decided either before or after *Butler,* which expressly holds that a "graven" dock should be considered as an extension of the land rather than of the water, their argument is that the

underlying rationale of cases such as *Smith & Son v Taylor (supra)* is inconsistent with the rationale which underlay the decision of the Court of Appeals in *Butler*.

As a matter of general logic, this contention is not wholly unpersuasive. It could be argued that there is no valid distinction between a person standing at the far end of a pier, on the one hand, and a person standing at the far end of the well of a "graven dock" on the other. Both persons might be located to the seaward side of an imaginary high tide line. Why should a legal distinction be made between the two so that if they were injured while working on adjacent vessels, only one would have a maritime remedy? Why should it matter that the first person was kept dry by a horizontal platform supported by vertical pilings, while the second was kept dry by a vertical wall constructed so as to create an enclosed area from which the water had been pumped?

■ On further consideration, however, there also appear to be several arguments based on reason alone which support drawing a distinction between ordinary docks, on the one hand, and "graven" docks, on the other. A pier is a more or less permanent fixture, and is meant to remain above the water level at all times. A "graven dock", by way of contrast, is a space which is dry only at times, after the water has been pumped out. Otherwise, it is a space which does consist of "navigable waters", in a sense, because it is clear that a ship about to be repaired must first navigate on the surface of the water into the "graven" dock. Thus, the "graven" dock may more easily be equated to artificial waterways, such as canals, which are generally held to be within maritime jurisdiction *(see, e.g., Ex Parte Boyer,* 109 US 629; *The Gerald A. Fagan,* 49 F2d 215, *affd sub nom. Marine Tr. Corp. v Dreyfus,* 284 US 263; *see also, The Robert W. Parsons,* 191 US 17; *Southern Natural Gas Co. v Gulf Oil Corp.,* 320 So 2d 917 [La]; *Strickland v Nutt,* 264 So 2d 317 [La]; *Pellegrin v Fidelity & Cas. Co.,* 193 So 2d 392 [La]).

The merits of the *Butler* decision *(supra)* might thus be considered fairly debatable, as a matter of general logic. What is clear, however, is that the rationale of the *Butler* decision, however debatable it might be, is not directly inconsistent with the rationale employed by the United States Supreme Court in any subsequent case, and is thus binding on us as an intermediate appellate court. For this reason, we are obligated to follow the holding of the *Butler* decision, whatever might be our view of the force of its underlying rationale.

It should be emphasized that when the Supreme Court decided *Smith & Son v Taylor* (276 US 179, *supra)* in 1928, it did not precipitously pronounce a new rule of law to the effect that, for the purpose of defining maritime jurisdiction in tort cases, piers and docks should be considered extensions of the land. The rule of maritime law pursuant to which piers and docks were to be considered as extensions of the land did not, in other words, take shape only after the 1925 decision of the New York State Court of Appeals in *Butler.* On the contrary, that rule had been established for many years. For example, in *The Plymouth* (3 Wall [70 US] 20 [1865], *supra),* the plaintiff brought an action to recover damages for property which, while stored on a wharf, had been destroyed by a fire which had originated on an adjacent ship. Finding, in effect, that the wharf was an extension of the land, the court held that admiralty jurisdiction did not apply.

Similarly, in 1924, just one year prior to the *Butler* decision *(supra),* the United States Supreme Court invoked this rule again in *Industrial Commn. v Nordenholt Corp.* (259 US 263, *supra, revg Matter of Insana v Nordenholt Corp.,* 232 NY 507). In that case, the New York State Court of Appeals had held that Federal maritime law applied to a case involving a deceased longshoreman who had slipped and fallen on a dock while unloading a ship. The United States Supreme Court reversed, holding instead that New York State Workmen's Compensation Law applied, because the accident had occurred on land *(see, Industrial Commn. v Nordenholt Corp., supra,* at 275-276, citing *Cleveland Term. R. R. v Steamship Co.,* 208 US 316, *supra).* It is thus impossible to consider the holding of the Court of Appeals in *Butler,* to the effect that a "graven" dock is to be considered an extension of the water, as having been made in ignorance of the general rule that an ordinary dock is to be considered an extension of the land. Rather, the *Butler* court's holding must be viewed as a deliberate decision to create an exception to that general rule.

Furthermore, the *Butler* decision *(supra)* should not be viewed as novel, or as unsupported by precedent. Two of the United States Supreme Court cases cited in the text of that decision in fact hold, albeit in the context of contract rather than tort actions, that ships in "dry dock" should be viewed as being on the water, rather than on land. In *The Steamship Jefferson* (215 US 130, 142, *supra),* the court stated: "In reason we think it cannot be held that a ship or vessel employed in navigation and commerce is any the less a maritime subject

within the admiralty jurisdiction when, for the purpose of making necessary repairs to fit her for continuance in navigation, she is placed in a dry dock and the water removed from about her, than would be such a vessel if fastened to a wharf in a dry harbor, where by the natural recession of the water by the ebbing of the tide, she for a time might be upon dry land."

In a similar vein, the Supreme Court, in *The Robert W. Parsons* (191 US 17, 33-34, *supra)*, stated that "[a]ll injuries suffered by the hulls of vessels below the water line, by collision or stranding, must necessarily be repaired in a dry dock, to prevent the inflow of water, but it has never been supposed, and it is believed the proposition is now for the first time made, that such repairs were made on land. Had the vessel been hauled up by ways upon the land and there repaired a different question might have been presented, as to which we express no opinion; but as all serious repairs upon the hulls of vessels are made in dry dock, the proposition that such repairs are made on land would practically deprive the admiralty courts of their largest and most important jurisdiction in connection with repairs. No authorities are cited to this proposition and it is believed none such exist."

The *Robert W. Parsons* case *(supra),* like *The Steamship Jefferson* case *(supra)* was based in contract. However, the reasoning expressed in the language quoted above supports the conclusion reached by the Court of Appeals in *Butler (supra)*. In both *The Steamship Jefferson* and *The Robert W. Parsons,* "dry docks" more or less similar to the one at issue here were equated with the water rather than land, and it is difficult to see how that equation might have been affected by the contractual rather than the tortious nature of the lawsuits under consideration in those cases.

Subsequent cases of the United States Supreme Court illustrate this point. In *Great Lakes Co. v Kierejewski* (261 US 479), the Supreme Court held that a plaintiff had a maritime cause of action where her decedent had drowned after the float upon which he had been standing while repairing an adjacent vessel was swamped as a result of the defendant's negligence. In *Gonsalves v Morse Dry Dock Co.* (266 US 171), the plaintiff was injured by a "blau torch" while engaged in the repair of a steamer which was resting on a floating dock off 27th Street, Brooklyn. Citing *The Robert W. Parsons (supra)* and distinguishing *Cope v Vallette Dry Dock Co.* (119 US 625), the court held that the accident occurred in "navigable

waters" and thus recognized a maritime cause of action in favor of the plaintiff.

The *Gonsalves* case *(supra)* is important because it demonstrates that the United States Supreme Court considers the holding of *The Robert W. Parsons* (191 US 17, *supra)* to be applicable in tort actions as well as in contract actions. In fact, assuming that floating docks are to be equated to graven docks *(see, Avondale Mar. Ways v Henderson,* 346 US 366 [Douglas, J., concurring]), *Gonsalves* can be distinguished from the present case only in that, in *Gonsalves,* the accident occurred while the plaintiff was working while standing on, as opposed to standing next to, a vessel. However, *Kierejewski (supra)* illustrates how this distinction is immaterial, because in that case maritime jurisdiction was extended to an off-vessel accident.

The plaintiffs' reliance on *Dirma v United States* (695 F Supp 714 [ED NY]) and *Egan v Morse Dry Dock & Repair Co.* (214 App Div 226) is unavailing. Neither the *Dirma* decision nor the *Egan* decision cites *Butler v Robins Dry Dock & Repair Co.* (240 NY 23, *supra).* This may be understandable, since the United States District Court for the Eastern District of New York, which decided the *Dirma* case, was not bound by the holding of *Butler,* and thus had no occasion to cite it. The *Egan* court's silence as to *Butler* is less easily explained; the Judges who decided *Egan* in October 1925 may have been unaware of the existence of *Butler.* Furthermore, neither of these decisions is particularly persuasive. For instance, *Dirma* relies upon cases *(see, e.g., Cope v Vallette Dry Dock Co.,* 119 US 625, *supra; J. M. L. Trading Corp. v Marine Salvage Corp.,* 501 F Supp 323 [ED NY]) which are not on point. *Egan* is factually distinguishable in that the plaintiff fell from a ladder which connected a ship in dry dock to an adjacent pier. In the present case, as in *Butler,* the plaintiff was inside the confines of the dry dock itself. More fundamentally, neither *Dirma* nor *Egan* may be considered binding on this court, as is *Butler.*

For these reasons, we conclude that the holding of the Court of Appeals in *Butler v Robins Dry Dock & Repair Co. (supra),* is fully consistent with what United States Supreme Court precedent there exists, and has not been overruled, implicitly or otherwise. In accordance with the holding of that case, it is clear that the tort which took place in this case occurred "on navigable waters" *(see also,* 2 CJS, Admiralty, § 20).

## IV

■ In *Executive Jet Aviation v City of Cleveland* (409 US 249, 256, *supra),* the United States Supreme Court held that in order for maritime jurisdiction to exist in tort cases, the wrong must not only have occurred in navigable waters, but it must also have borne some relationship to "traditional maritime activities". The plaintiffs argue not only that there was no maritime "situs" in this case, an argument which we have rejected on the authority of *Butler v Robins Dry Dock & Repair Co.* (240 NY 23, *supra),* but also that there is no maritime "nexus". We disagree.

It has been already held, in the context of a contract action, that the repairing of a ship is a "maritime" activity *(see, e.g., New Bedford Co. v Purdy,* 258 US 96; *see also, Northern Pac. S. S. Co. v Hall Bros. Co.,* 249 US 119). As noted above, the scope of Federal maritime jurisdiction in contract actions depends not on the location of the wrong, but on the nature of the underlying transaction *(Exxon Corp. v Central Gulf Lines,* 500 US —, 111 S Ct 2071, *supra).* However, we see no reason to distinguish between the so-called "nexus" test, as it has evolved in tort cases following *Executive Jet Aviation (supra),* on the one hand, and the transactional test which has historically governed Federal maritime jurisdiction in contract actions. It would seem to us most unusual if the same activity, i.e., the repairing of a ship, were considered sufficiently related to maritime activities so as to give rise to admiralty jurisdiction in an action sounding in contract, but not sufficiently related to maritime activities so as to give rise to such jurisdiction in an action based on tort.

In *Sisson v Ruby* (497 US 358, 110 S Ct 2892, *supra),* the court refined the "nexus" test, stating that there were in fact two dimensions to the "nexus", both of which had to be satisfied. Not only must the accident have arisen from "traditional maritime activities", but the accident must be of the general type which could in any way impede "maritime commerce". This additional aspect of the "nexus" test is satisfied here, since the United States Supreme Court has expressly stated that accidents which occur during ship repair bear a "direct relation to navigation and commerce" *(Robins Dry Dock Co. v Dahl,* 266 US 449, 457; *see also, Great Lakes Co. v Kierejewski,* 261 US 479, 480-481, *supra* [holding that right of recovery possessed by worker injured while repairing a scow was a matter which had "direct relation to navigation or commerce"]).

A review of other cases, several of which involve the scope of the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.),* but which are clearly analogous on this point, leaves no doubt that the repairing of a ship's propeller is a "traditional maritime activity". In *Broughton Offshore Drilling v South Cent. Mach.* (911 F2d 1050 [5th Cir]), the court held that a claim based on the negligent repair of hydraulic rods on an oil rig had a sufficient connection to traditional maritime activities so as to support admiralty jurisdiction. In *Shea v Rev-Lyn Contr. Co.* (868 F2d 515 [1st Cir]), the court held that the repairing of a drawbridge was a "traditional maritime activity" so as to provide a negligence remedy pursuant to the Longshore and Harbor Workers' Compensation Act (33 USC § 905 [b]) in favor of a worker who was injured while making such repairs from a crane supported by a barge. In *Ward v Norfolk Shipbuilding & Drydock Corp.* (770 F Supp 1118, 1121 [ED Va 1991]) the court recognized a Federal negligence cause of action pursuant to the Longshore and Harbor Workers' Compensation Act, stating that the plaintiff was "injured on navigable waters while doing repair work on a ship; a traditional maritime activity".

In *Antill v Public Grain Elevator* (577 So 2d 1039 [La]), the court held that the maritime "nexus" had been established where a longshoreman had contracted asthma as the result of the loading of grain onto ships. In *Orgeron v Avondale Shipyards* (561 So 2d 38, 43 [La], *cert denied* — US —, 111 S Ct 62), the court noted that ship repair "has generally been regarded as a traditional maritime activity". In *Wistrom v Duluth, Missabe & Iron Range Ry. Co.* (437 NW2d 730, 733 [Minn], *cert denied* 493 US 991), the court held that the maintenance of machinery used in the loading and unloading of cargo was a "traditional maritime function".

We acknowledge that our holding that a maritime nexus exists in this case, in view of the fact that the injured plaintiffs were engaged in traditional maritime activity both at the time that they were injured and at the time of the injury-causing event, could be regarded as in conflict with certain decisions made by other courts. For example, in a case where a Navy seaman contracted a disease due to exposure to a toxic substance on board the aircraft carrier U.S.S. Independence, the United States Court of Appeals for the Eleventh Circuit has recently held that maritime jurisdiction did not exist *(Cochran v duPont de Nemours,* 933 F2d 1533 [11th Cir], *cert denied sub nom. Cochran v American Abrasive Metals Co.,*

— US —, 112 S Ct 881). Focusing on the fact that the "instrumentality" which caused the injury (the nonskid hangar deck surface which the plaintiff, as part of his duties, had to grind and patch, causing emission of trichlorethylene dust) was not particularly "maritime" and that the disease (silicosis) caused by exposure to this "instrumentality" was also not particularly "maritime", the court concluded that no maritime nexus had been shown.

We decline to follow *Cochran (supra)* or any other case which could be said to limit admiralty jurisdiction to cases in which the injury-provoking instrument, or the injury itself, can properly be defined as "maritime". This is carrying the "nexus" test too far. A person who is burned in the course of a fire at sea should not be deprived of an admiralty remedy to which he would otherwise be entitled solely because a fire can occur just as easily on land, or solely because a burn can just as easily be inflicted on land, or solely because the match which started the fire may not have been an inherently "maritime" instrument. We agree on this issue with our colleagues in the Appellate Division, First Department, and hold that a maritime "nexus" may exist in tort cases even where the injury-causing agency is not itself "maritime" *(see, Swogger v Waterman S. S. Corp.,* 151 AD2d 100; *but see, Keene Corp. v United States,* 700 F2d 836 [2d Cir], *cert denied* 464 US 864). Thus, the fact that the eyebolt which snapped and caused the disaster in this case was not itself a "marine eyebolt" does not defeat admiralty jurisdiction.

We are likewise in disagreement with any case which can be read as holding that an injured party has no maritime remedy unless, at the time of the accident, he was actually carrying out a task requiring maritime or nautical skills. For example, in *Harville v Johns-Manville Prods. Corp.* (731 F2d 775 [11th Cir]), the court held that various "land based" workers (pipe fitters, machinists, welders) had no admiralty remedy for injuries sustained on what was assumed to be a maritime situs, focusing on the fact that the plaintiffs' jobs did not entail the skills normally associated with professional seamen *(see also, Austin v Unarco Indus.,* 705 F2d 1 [1st Cir], *cert dismissed* 463 US 1247). Taken to its extreme, this rationale would result in the limitation of admiralty jurisdiction to only those plaintiffs who were engaged, at the moment of the accident, in some type of "nautical" behavior. This, in turn, would be clearly inconsistent with Supreme Court precedent. For example, in *Kermarec v Compagnie Generale* (358 US 625),

the court held that maritime law governed the action brought by a "land based" plaintiff (a person visiting a crew member) who had fallen on a stairway on a ship.

Cases such as *Harville (supra), Keene Corp. (supra)* and *Cochran (supra)* seem to us to reflect an unfortunate tendency to give inordinate weight to the "maritime" nature of isolated aspects of a case, when it is the "maritime" nature of the case as a whole which should govern. It seems to us futile to inquire whether a particular injury, or a particular tool, or a particular disease, or a particular instrument should be considered "nautical", and we do not believe that the scope of admiralty jurisdiction depends upon the answer to such questions. We will, therefore, make no attempt to list any number of "factors", or to define a test consisting of any number of "prongs", as part of an attempt to formulate a definition of the term "nexus" that would be useful in all future admiralty cases. The attempts made by the various United States Courts of Appeals to formulate such an all-encompassing definition *(see, Kelly v Smith,* 485 F2d 520 [5th Cir], *cert denied sub nom. Chicot Land Co. v Kelly,* 416 US 969 [defining four-part test]; *see also, Lewis Charters v Huckins Yacht Corp.,* 871 F2d 1046 [11th Cir]; *Drake v Raymark Indus.,* 772 F2d 1007 [1st Cir]; *Guidry v Durkin,* 834 F2d 1465 [9th Cir]; *Oman v Johns-Manville Corp.,* 764 F2d 224 [4th Cir], *cert denied sub nom. Oman v Porter Co.,* 474 US 970), have, in our view, not led to satisfactory results.

Application of the "four-part" test as it is defined in cases such as *Kelly (supra)* has led to decisions such as *Harville v Johns-Manville Prods. Corp.* (731 F2d 775 [11th Cir], *supra), Cochran (supra)* and *Keene Corp. (supra),* which we believe are incorrect. The four-part test has rightly been characterized as easily subject to judicial manipulation and as "highly questionable" (Comment, *Jurisdiction in 905 [b] Actions: Wrong Test Doomed to Wrong Results,* 13 Tul Mar LJ 121 [1988]; *see also,* Berns, *Regression of Maritime Jurisdiction in Tort Actions,* 3 U S F Mar LJ 159 [1990-1991]; Comment, *Admiralty Jurisdiction Over Asbestos Torts: Unknotting the Tangled Fibers,* 54 U Chi L Rev 312 [1987]). Rather than adopt the "four part" test, or any other multifaceted test for defining the term "nexus" in *all* maritime cases, we simply hold that in *this* case, a "nexus" has been shown because it has been proved that at the time the wrongful act or omission occurred (the use of the eyebolt) and at the time of the accident, the

injured plaintiffs were engaged in a pursuit, i.e., ship repair, which the law has traditionally defined as "maritime".

It is important to emphasize that analysis of the question of whether a maritime "nexus" has been shown must not be influenced by considerations that bear on the separate question of whether a maritime "situs" has been shown. The two tests present sufficient difficulties in their own right and these difficulties would only be compounded if the two tests were themselves confused. Thus, in the present case, once the "situs" test has been resolved *(see, Butler v Robins Dry Dock & Repair Co.,* 240 NY 23, *supra),* the location of the injured plaintiffs at the time of the accident becomes irrelevant to deciding whether the "nexus" test has been satisfied. Once this observation has been made, it seems to us to follow, more as a matter of common sense than as the result of the application of any particular legalistic formula, that the accident is related to traditional maritime concerns *(see also, Robins Dry Dock Co. v Dahl,* 266 US 449, *supra* [maritime jurisdiction held to displace New York Labor Law where worker fell from scaffold while working on board steamship]).

We therefore conclude that maritime jurisdiction exists in this case *(see, Executive Jet Aviation v City of Cleveland,* 409 US 249, *supra).*

## V

The order appealed from is affirmed on the basis of the above analysis. It is appropriate at this point to explain, briefly, why the order appealed from may not be affirmed for the reasons stated by the Supreme Court, Kings County.

In *Stuto v Coastal Dry Dock & Repair Corp.* (153 AD2d 937), this court held that in a case governed by maritime law, the liability provisions of the New York State Labor Law (Labor Law §§ 240, 241) could not be applied. In the present case, as noted above, this proposition is expressly conceded by the attorney for the plaintiffs. The argument made by the attorney for the plaintiffs in this case is that maritime law does not govern, therefore the New York State Labor Law governs.

The *Stuto* case *(supra),* relied upon by the Supreme Court, Kings County, was decided in the context of an appeal where the plaintiff's attorney had apparently conceded the very issue which is now being litigated (the existence of maritime jurisdiction) and where the plaintiff's attorney had also apparently chosen to litigate the very issue which the attorney for the

present plaintiffs now concedes (that maritime law prohibits imposition of liability in the absence of fault). Thus, however factually similar the two cases may be, *Stuto* cannot properly be considered controlling in this case. The proposition for which the defendants claim it stands, i.e., that maritime law governs accidents which occur within "graven" docks, was not adopted by the court, but instead was the subject of a formal concession.

■ Furthermore, *Stuto (supra)* should not be read as holding that Federal maritime jurisdiction exists pursuant to 28 USC § 1333 (1) in any case where the plaintiff is shown to have accepted benefits pursuant to the Longshore and Harbor Workers Compensation Act (33 USC § 901 *et seq.*). The scope of Federal maritime jurisdiction in tort actions brought by injured harbor workers against parties other than their employers is unaffected by whether such statutory benefits have been obtained (*see, Millspaugh v Port of Portland*, 65 Ore App 389, 671 P2d 743, 745-746; *Parker v South La. Contrs.*, 537 F2d 113, 116-118 [5th Cir], *cert denied* 430 US 906; *Harville v Johns-Manville Prods. Corp.*, 731 F2d 775, 787, n 9 [11th Cir], *supra; Garvin v Alumax of S. C.*, 787 F2d 910, 917 [4th Cir], *cert denied* 479 US 914; *Drake v Raymark Indus.*, 772 F2d 1007, 1018 [1st Cir], *supra, cert denied* 476 US 1126; *Dean v State*, 542 So 2d 742, 744 [La]). The Supreme Court apparently interpreted the *Stuto* decision as being contrary to this rule. Such a reading of *Stuto* is not warranted.

## VI

For the foregoing reasons, we conclude that the present action falls within Federal maritime jurisdiction (US Const, art III, § 2, cl [1]; 28 USC § 1333 [1]). This being the case, the provisions of the New York State Labor Law (Labor Law §§ 240, 241) are not applicable, and, consequently, the defendants and the third-party defendant are entitled to summary judgment. In light of this determination, we need not address the various alternative contentions which the respondents have advanced in support of an affirmance. Accordingly, the order appealed from is affirmed.

THOMPSON, J. P., SULLIVAN and LAWRENCE, JJ., concur.

Ordered that the order is affirmed, with one bill of costs.