OPINION OF THE COURT
Leonard Silverman, J.
On September 15, 1991 Dimitrios Rigopoulos (hereafter claimant) was employed for a contractor engaged in the painting of the Robert Moses Causeway Bridge. Claimant performed his work by standing on a barge floating in the Great South Bay and tied to a bridge pier. Claimant climbed onto the bridge from an unopened five-foot "A” frame aluminum stepladder. The base of the ladder was on the barge. The top was resting against the bridge pier. The barge was not owned, maintained or operated by the State. Claimant was injured while descending the ladder when he fell backward from the ladder and landed on the barge.
Both sides seek summary judgment. Defendant seeks to dismiss the claim on the ground that this claim is preempted by the Longshore and Harbor Workers’ Compensation Act and jurisdiction lies exclusively in the Federal courts.
Claimants’ motion, limited to the issues of liability, is predicated upon the absolute liability imposed upon an owner pursuant to Labor Law § 240. As it applies here section 240 mandates that all owners and contractors furnish or erect scaffolding or other safety devices to give proper protection to a person employed in the construction or repair of a building or structure.
The threshold question we must resolve is whether the claim is governed by admiralty or maritime law, in which event we would lack jurisdiction due to the inapplicability of the Labor Law (Torres v City of New York, 177 AD2d 97).
In order for maritime jurisdiction to exist the wrong must have occurred in navigable waters and must have some rela *1111 tionship to traditional maritime activities (Executive Jet Aviation v City of Cleveland, 409 US 249). The locality test is satisfied in this case by virtue of the fact that the barge was afloat on the Great South Bay. That bay, is without doubt, a navigable water.
Having met the locality requirement we must next determine if there is a maritime nexus, i.e., a significant relationship to traditional maritime activity (Foremost Ins. Co. v Richardson, 457 US 668). An analysis of this question requires a review of four factors: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and type of injury; and the traditional concepts of the role of admiralty law (Kelly v Smith, 485 F2d 520).
To determine the function of the parties we must go beyond the fact that an accident occurred on navigable waters and determine if the tasks being performed had any inherent relationship to maritime activity (Dean v State, 542 So 2d 742 [La]).
In the claim before us, claimant’s job was not unique to maritime commerce. Claimant’s task was connected to maritime activity merely because a barge was used as a platform in lieu of scaffolding suspended from the bridge. Not only was claimant’s job unrelated to maritime commerce, but it does not appear that claimant’s employer was involved in maritime commerce. From the foregoing we find this factor weighs against a finding of a maritime connection.
The next factor involves the types of vehicles and instrumentalities involved. The barge is clearly a vessel used primarily in maritime commerce. The ladder, however, is not unique to maritime activity. The focus of this claim will be upon the ladder, not the barge. In this instance the instrumentality is more significant than the vehicle and we find this factor weighs against finding a significant nexus.
The third factor pertains to the causation and type of injury. Claimant’s injury was caused by the positioning or collapse of the ladder. It does not appear that the fall was attributable to a maritime activity or was otherwise caused by the fact that the barge was on navigable waters. The allegations in the claim are that defendant failed to provide proper safety devices for the painting of the bridge. Although the injury occurred on navigable waters, the injury is not of a uniquely maritime character to sustain a relationship to maritime commerce or navigation. For these reasons, the third factor operates against finding a maritime nexus.
*1112 The fourth and final factor, the traditional concepts of the role of admiralty law can best be analyzed by determining the impact of the event on maritime shipping; the desirability of a uniform national rule to apply to such matters and the need for admiralty expertise in the trial (Molett v Penrod Drilling Co., 826 F2d 1419).
There is no indication that this accident had any impact on maritime shipping or commerce. We also do not see how the exercise of Federal maritime law over this claim would advance the policies of Federal admiralty law. Those policies have been developed to handle problems related to vessels on waterways. This includes matters pertaining to navigational rules, collisions, seaworthiness, cargo claims and salvage claims. These traditional concerns do not involve claimants’ allegations of improper safety devices. This claim is a traditional tort claim which does not require a uniform law or expertise in admiralty.
Therefore, this factor also weighs against a finding of a maritime nexus.
From the foregoing analysis it is apparent that there is not a sufficient relationship to maritime activities so that this claim would be governed by admiralty law. Accordingly, defendant’s motion to dismiss is denied.
Having disposed of the jurisdictional question in favor of claimants, we must next resolve their motion for summary judgment pursuant to Labor Law § 240 (1).
Claimant submits an affidavit which indicates that at the direction of his employer he climbed onto a bridge pier from a barge tied to the pier by ascending a five-foot stepladder. He states that the aluminum "A” frame ladder was unopened and leaning against the pier. The top of the ladder was not secured to the pier and the bottom was not secured to the barge. Claimant’s affidavit iterates the fact that he was instructed to use the ladder in this manner. The defendant does not refute that contention. When claimant began to descend the ladder from the pier, he placed one foot on the ladder and it collapsed. Claimant argues that the ladder was used in a manner which violates various rules and that he was not furnished the requisite safety equipment.
Defendant opposes this motion with an affirmation by counsel wherein he argues that questions of fact exist as to whether a violation of the statute was a proximate cause of the accident. Counsel cites portions of claimant’s examination *1113 before trial that indicate claimant was coming down the ladder and the ladder fell. Counsel also refers to claimant’s affidavit in support of this motion which states that the ladder collapsed as claimant put his foot upon it.
From this alleged discrepancy counsel contends that there is a question of fact as to whether the accident occurred from a violation of statute or claimant’s "misstep”.
Labor Law § 240 is to be construed as liberally as may be, so as to provide workers with safe working conditions and to protect them from injury (Rocovich v Consolidated Edison Co., 78 NY2d 509). The statute imposes absolute liability on the owner of a structure for failure to provide or erect safety devices to protect a worker who sustains an injury proximately caused by that failure (Zimmer v Chemung County Performing Arts, 65 NY2d 513). A bridge is a structure within the meaning of section 240 and painting is one of the enumerated activities in the statute. Claimant fell from an elevated height and is clearly a member of the protected class. Therefore, the defendant is liable if there was a violation of the statute and the injuries resulted from that violation.
The defendant is charged with the responsibility of seeing that a ladder is properly placed and erected (Heath v Soloff Constr., 107 AD2d 507). Liability may not be avoided by the fact that claimant’s employer provided the ladder or that claimant contributed to his own injury (Harmon v Sager, 106 AD2d 704). The failure to secure the ladder to ensure that it remained steady and erect is a violation of Labor Law § 240 (1) (Fernandez v MHP Land Assocs., 188 AD2d 417). This failure is a violation of the statute if the ladder slipped (Urrea v Sedgwick Ave. Assocs., 191 AD2d 319) or broke (Harmon v Sager, supra) or collapsed (Place v Grand Union Co., 184 AD2d 817).
The papers before the court clearly establish that claimant was injured as a result of his fall from the ladder. The ladder either fell or collapsed precipitating claimant to the deck of the barge. The affirmation from defense counsel is insufficient to create a question of fact as to how this accident occurred.
The uncontroverted evidence is that claimant utilized an "A” frame ladder which, due to the location of the work, was leaned against a bridge pier in an unopened position. The failure of the ladder and resulting injury gives rise to absolute liability as a matter of law (Dennis v Beltrone Constr. Co., 195 AD2d 688).
*1114 The proof submitted by claimants sufficiently established that the statute was violated and the violation was the cause of claimant’s injuries (Place v Grand Union Co., supra). Defendant’s opposition is based on speculation and unsupported by any evidence and is insufficient to defeat claimants’ motion. Even if claimant fell as a result of his own misstep, liability would follow (Barnaby v A. & C. Props., 188 AD2d 958).
Accordingly, claimants’ motion for summary judgment on the issues of liability is granted. The Clerk shall enter an interlocutory judgment in favor of claimants, Dimitries Rigopoulos and Victoria Rigopoulos, individually and as husband and wife, and against the defendant, State of New York, in accordance with this opinion.