[638 NYS2d 94]

ROBERT R. TOMPKINS, Respondent, v PORT OF NEW YORK
AUTHORITY, Appellant and Third-Party Plaintiff. MACRO
ENTERPRISES, LTD., Third-Party Defendant-Respondent.

Second Department, February 5, 1996

### APPEARANCES OF COUNSEL

*Fiedelman & Hoefling,* Jericho *(Susan E. Lysaght* of counsel), for appellant and third-party plaintiff.

*Harvey S. Barer,* Garden City, for respondent.

*Ahmuty, Demers & McManus,* Albertson *(Frederick B. Simpson* and *Daniel J. Hansen* of counsel), for third-party defendant-respondent.

### OPINION OF THE COURT

BRACKEN, J.

In this action to recover damages for personal injuries, we conclude (1) that there was both a maritime situs and a maritime nexus, (2) that these circumstances establish that the case falls within Federal maritime jurisdiction, (3) that we are therefore required to apply substantive Federal maritime law to this action, and (4) that the appellant, Port of New York Authority, has demonstrated its entitlement to summary judgment under the principles of Federal maritime law, because it has demonstrated its freedom from any actual negligence which might have contributed to the plaintiff's injuries. For these reasons, we reverse, and grant the appellant's motion for summary judgment.

The plaintiff was injured while engaged in the making of certain repairs to Pier 88 in New York harbor. At the time of the injury, the plaintiff was located on a "float stage". The float stage rested on the surface of the water, and rose and fell with the tide. It was secured to the pier by "heavy lines", and could be "moved along the edge of Pier 88 during the construction process". The accident occurred when "a nearby crane * * * allowed [a piling] to fall and strike the float stage". This in turn caused the plaintiff to fall and injure himself.

After the plaintiff moved for partial summary judgment the appellant Port of New York Authority cross-moved for summary judgment to dismiss the complaint, arguing that the tort alleged by the plaintiff as the basis for relief came within Federal maritime jurisdiction *(see,* US Const, art III, § 2 [1]; 28 USC § 1333 [1]; *Executive Jet Aviation v City of Cleveland,* 409 US 249). The appellant established, in support of its cross mo-

tion, that it was the plaintiff's employer, the third-party defendant Macro Enterprises, Ltd., which had "provided and operated the crane which was holding the piling involved in the accident". The Supreme Court initially agreed with the appellant's argument that maritime law applied, and granted the cross motion. However, on reargument, the court vacated the prior order, and denied the cross motion. This appeal followed.

The general principles of Federal maritime law, as such law may be applied in State courts, were set forth by this Court in *Torres v City of New York* (177 AD2d 97, 100-102, 109, *cert denied* 507 US 986), as follows:

"United States Constitution, article III, § 2, clause (1), provides that '[t]he judicial Power [of the courts of the United States] shall extend * * * to all Cases of admiralty and maritime Jurisdiction'. This provision of the Constitution has been implemented by 28 USC § 1333 (1), which states that '[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled'. * * *

"The scope of Federal maritime jurisdiction in tort cases was, until relatively recently, defined with reference to one single test, that is, a test based upon 'the locality of the wrong' *(Executive Jet Aviation v City of Cleveland,* 409 US 249, 253, *supra; see also, Victory Carriers v Law,* 404 US 202, 205). According to this test, the border between State tort law jurisdiction and Federal maritime jurisdiction was as easy to trace as the border between the land and the sea. Admiralty jurisdiction encompassed only those torts which were ' "committed on the high seas, or on waters within the ebb and flow of the tide" ' *(Executive Jet Aviation v City of Cleveland, supra,* at 253; *Victory Carriers v Law, supra,* at 205; *Thomas v Lane,* 23 F Cas 957, 960 [CC Me 1813; No. 13, 902]). The scope of Federal maritime jurisdiction in tort cases was later expanded to cover 'not only tidewaters, but all navigable waters, including lakes and rivers' *(Executive Jet Aviation v City of Cleveland, supra,* at 253, citing *The Propeller Genesee Chief v Fitzhugh,* 12 How [53 US] 443). In contract cases, by way of contrast, Federal maritime jurisdiction has been traditionally defined not with reference to the locality of the wrong, but instead with reference to the nature of the transaction *(see, Exxon Corp. v Central Gulf Lines,* 500 US [603]; *Grant Smith-Porter Co. v Rohde,* 257 US 469, 476; *Danielsen v Morse Dry Dock & Repair Co.,* 235 NY 439, 442, *cert denied* 262 US 756). * * *

"In *Executive Jet Aviation v City of Cleveland* (409 US 249, 256, *supra*), the United States Supreme Court held that in order for maritime jurisdiction to exist in tort cases, the wrong must not only have occurred in navigable waters, but it must also have borne some relationship to 'traditional maritime activities'. The plaintiffs argue not only that there was no maritime 'situs' in this case, an argument which we have rejected on the authority of *Butler v Robins Dry Dock & Repair Co.* (240 NY 23, *supra*), but also that there is no maritime 'nexus' ".

As outlined in *Torres (supra)*, Federal maritime law applies in personal injury cases where:

(1) There is a maritime situs, that is, where the accident occurs on navigable waters (or, under the Admiralty Jurisdiction Extension Act, where a vessel on navigable waters inflicts an injury on a person positioned on the land) and

(2) There is a maritime nexus, that is, the plaintiff's accident arises out of some traditional maritime activity.

The submissions establish conclusively that the plaintiff was engaged in a traditional maritime activity at the time of the accident in that he was engaged in the repairing of a dock *(see, Irvin v Amerada Hess Corp.*, 191 AD2d 478, 479, citing *Torres v City of New York, supra; Duncanson-Harrelson Co. v Director, Off. of Workers' Compensation Programs*, 686 F2d 1336, *vacated on other grounds* 462 US 1101, *on remand* 713 F2d 462; *Wistrom v Duluth, Missabe & Iron Range Ry. Co.*, 437 NW2d 730 [Minn]). The submissions also establish that the tort was consummated " 'on the high seas, or on waters within the ebb and flow of the tide' " *(Executive Jet Aviation v City of Cleveland, supra*, at 253, quoted in *Torres v City of New York, supra*, at 101; *see also, Great Lakes Co. v Kierejewski*, 261 US 479 [plaintiff's decedent located on float alongside scow]; *Gonsalves v Morse Dry Dock Co.*, 266 US 171 [plaintiff located on floating dock off 27th Street, Brooklyn]). Contrary to the plaintiff's central argument, the "floating dock" in question was not permanently attached to Pier 88, and hence cannot be considered an extension of the land *(cf., Victory Carriers v Law*, 404 US 202, 206-207, *supra*).

Because there was both a maritime "nexus" and a maritime "situs", traditional maritime law applies *(see, US Const, art III, § 2 [1]; 28 USC § 1333 [1]; Executive Jet Aviation v City of Cleveland*, 409 US 249, *supra; Torres v City of New York*, 177 AD2d 97, *supra*). Application of maritime law does not depend either on the terms of the Admiralty Jurisdiction Extension Act of 1948 (46 USC, Appendix § 740; *see, Jerome B. Grubart,*

*Inc. v Great Lakes Dredge & Dock Co.,* 513 US —, 115 S Ct 1043) or on the terms of the Jones Act (46 USC, Appendix § 688; *see, Powers v Bethlehem Steel Corp.,* 477 F2d 643, 648, *cert denied* 414 US 856). Thus, maritime law applies irrespective of whether the float stage may properly be described as a "vessel" *(cf., Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co., supra).*

Under Federal maritime law, the appellant may be liable to the plaintiff only upon proof of actual negligence. The absolute liability provisions of the Labor Law may not serve as the basis for the imposition of tort liability *(Torres v City of New York, supra).* The provisions in the appellant's contract with the third-party defendant which allowed the appellant to supervise the progress of the work do not furnish the basis for imposing such liability *(Amazon v British Am. Dev. Corp.,* 216 AD2d 702; *Paterson v Hennessy,* 206 AD2d 919; *Wendel v Pillsbury Corp.,* 205 AD2d 527; *Macutek v Lansing,* 202 AD2d 823; *Jonchuk v Weafer,* 199 AD2d 591; *Danish v Kennedy,* 168 AD2d 768; *Rimoldi v Schanzer,* 147 AD2d 541; *Dewitt v Pizzagalli Constr. Co.,* 183 AD2d 991; *Ortiz v Uhl,* 39 AD2d 143, *affd* 33 NY2d 989).

For these reasons, the order is reversed insofar as appealed from, on the law, the appellant's cross motion for summary judgment is granted, and the complaint is dismissed.

MANGANO, P. J., SULLIVAN and HART, JJ., concur.

Ordered that the order is reversed insofar as appealed from, on the law, with costs payable by the plaintiff, the appellant's cross motion for summary judgment is granted, and the complaint is dismissed.