[700 NYS2d 110]

Willie Cammon, Appellant, v City of New York et al., Respondents. Anjac Enterprises, Inc., Third-Party Plaintiff, v Macro Enterprises, Inc., Third-Party Defendant.

First Department, December 2, 1999

## APPEARANCES OF COUNSEL

*Paul T. Hofmann* of counsel (*Cappiello Hofmann & Katz, P. C.,* attorneys), for appellant.

*Irwin H. Haut* of counsel (*Morris, Duffy, Alonso & Faley, L. L. P.,* and *Thomas Leonard,* attorneys), for respondents.

*William M. Kimball* (*James P. O'Connor* on the brief), for third-party defendant.

## OPINION OF THE COURT

NARDELLI, J.

We decide in this appeal that this State's Labor Law's strict liability provisions have not been preempted by the Federal maritime law and that New York State has the right to continue to regulate safe construction practices in its navigable waters concurrently with the application of the Federal maritime law.

Plaintiff Willie Cammon is a construction worker who was employed by third-party defendant Macro Enterprises, Inc. when he was injured while engaged in renovation and reconstruction work on a rehabilitation project at the South Bronx Marine Transfer Station, commonly known as the Hunts Point Sanitation Department Transfer Station. While plaintiff was on a floating raft secured to the land-based structure, a passing tugboat created turbulence which made a crane bar and float stage move causing a timber to swing into and injure him. Plaintiff began this action against the City of New York, which was the owner of the Hunts Point Station, and the general contractor Anjac Enterprises, Inc. Defendants' motion to dismiss the complaint pursuant to Labor Law § 240 (1) and other sections of the Labor Law, including sections 200 and 241 (6), was granted by the IAS Court.

The IAS Court, in granting judgment for defendants, found that the case fell within Federal maritime jurisdiction and following First Department precedents, it then found that Federal maritime law preempted both Labor Law §§ 240 and 241 causes of action.

It is undisputed that this accident did occur in navigable waters and that plaintiff is an employee covered by the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.* [LHWCA]) and was, in fact, awarded benefits under that Act. In *Tibak v City of New York* (154 AD2d 313, *lv denied* 75 NY2d 705), this Court, in a remarkably similar factual pattern, determined that the case was governed by general mari-

time law and that the Labor Law did "not apply since the rights and liabilities of the parties under the general maritime law cannot be enlarged or impaired by State statute" (*supra,* at 314).

A party seeking to invoke Federal admiralty jurisdiction over a tort claim "must satisfy conditions both of location and of connection with maritime activity" (*Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.,* 513 US 527, 534). The work herein, i.e., repairing the pier that is adjacent to a navigable waterway, constitutes traditional maritime activity which is governed by the principles of Federal maritime law (*supra,* at 540). In 1985, the Court of Appeals said, in *Lerner v Karageorgis Lines* (66 NY2d 479, 484-485), that "[i]n maritime cases, State courts must apply Federal law 'to secure a single and uniform body of maritime law' (*Matter of Rederi [Dow Chem. Co.],* 25 NY2d 576, 581, *cert denied* 398 US 939; *see also, Ugarte v United States Lines,* 64 NY2d 836, *rearg denied* 64 NY2d 1041; *Alvez v American Export Lines,* 46 NY2d 634, *affd* 446 US 274)". In *Tibak v City of New York* (*supra*), as noted, we affirmed a nisi prius court's dismissal of the plaintiff's State Labor Law claims on the ground that decedent was on a barge on navigable waters within the United States engaged in renovating a pier for the use of the Department of Sanitation when the accident occurred.

Since *Tibak v City of New York* (*supra,* at 314) in 1995 the United States Supreme Court decided *Jerome B. Grubart, Inc. v Great Lakes Dredge & Dock Co.* (*supra,* at 545), noting that the "exercise of federal admiralty jurisdiction does not result in automatic displacement of state law." State law must yield to the needs of a uniform Federal maritime law if there are inroads upon that system, but this limitation still leaves to States a wide scope (*Romero v International Term. Operating Co.,* 358 US 354, 373). Thus, State remedies have generally been applied in maritime wrongful death cases "in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade" (*Yamaha Motor Corp. v Calhoun,* 516 US 199, 202).

In *Sun Ship v Pennsylvania* (447 US 715 [1980]), the Supreme Court held that a State may apply its workers' compensation scheme to land-based injuries that fall within the coverage of the Longshore and Harbor Workers' Compensation Act (33 USC § 901 *et seq.,* as amended in 1972; *see, Sun Ship v Pennsylvania,* 447 US, at 724). The Court found that a

State's "remedial scheme" might be "more generous than federal law" but nevertheless could apply because Congress indicated no concern "about a disparity between adequate federal benefits and superior state benefits" (*supra,* at 724). Thus, the Supreme Court came to "the conclusion that the 1972 extension of federal jurisdiction supplements, rather than supplants, state compensation law" (*supra,* at 720).

After these rulings of the United States Supreme Court, the Second Department, whose holdings had previously been in accord with the pronouncement of this Court in *Tibak v City of New York* (*supra*), expressly overruled its earlier opinions. It stated in *Eriksen v Long Is. Light. Co.* (236 AD2d 439) that the general maritime law preempts only those portions of the Labor Law § 240 (1), which impose a strict liability standard, whereas Labor Law §§ 200 and 241 (6), which do not impose such a standard, are not preempted. The current position of the Second Department appears to be that the issue of liability is governed by the principles of Federal maritime law. Under Federal maritime law, the defendant may be held liable to the claimant only upon proof of *actual* negligence. Therefore, the Second Department finds that Labor Law § 240 (1), which imposes strict liability for its breach, may not serve as the basis for tort liability in these circumstances (*see, Tompkins v Port of N. Y. Auth.,* 217 AD2d 269, 273; *Torres v City of New York,* 177 AD2d 97, *cert denied* 507 US 986; *Stuto v Coastal Dry Dock & Repair Corp.,* 153 AD2d 937, *appeal dismissed* 75 NY2d 865). However, Labor Law § 200 (1) and § 241 (6) do not impose strict liability for their breach (*see, Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Zimmer v Chemung County Performing Arts,* 65 NY2d 513; *Monroe v City of New York,* 67 AD2d 89), and therefore are not preempted by Federal maritime law (*see, Eriksen v Long Is. Light. Co.,* 236 AD2d 439, *supra; Rigopoulos v State of New York,* 236 AD2d 459, 460).

In respectfully disagreeing with this conclusion, we agree with Judge Sweet of the United States District Court for the Southern District of New York, who recently rejected *any* preemption of the New York Labor Law by the Federal maritime law (*see, Gravatt v City of New York,* 1998 US Dist LEXIS 4886, 1998 WL 171491 [Apr. 10, 1998, 97 Civ 0354]). In *Gravatt,* which involved a similar fact pattern to that herein, Judge Sweet noted that:

" 'State law can be pre-empted in either of two general ways. If Congress evidences an intent to occupy a given field, any

state law falling within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still pre-empted to the extent it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress'.

"The application of these principles of preemption leads to the conclusion that there is no basis for refusing to enforce New York's Labor Law in this case. First, protecting workers employed in the state is within the historic police powers of the State and there is no 'clear and manifest' Congressional intent to preempt this state prerogative." (*Supra,* 1998 US Dist LEXIS, at * 32, 1998 WL, at 12.)

The plaintiff in *Gravatt,* as plaintiff herein, was covered by the Federal statute, the Longshore and Harbor Workers' Compensation Act (33 USC § 904). However, as noted by Judge Sweet, the LHWCA regulates the relationship "only between (1) longshoreman/harbor workers, (2) their employers, and (3) vessel owners. No rights or remedies outside of this triangle were disturbed or regulated by Congress." (1998 US Dist LEXIS, at * 33-34, 1998 WL, at 12.) Accordingly, since the LHWCA does not address claims by injured workers against third parties, there is no indication that Congress intended to preclude the application of our State law to such third party claims against nonmaritime defendants.

In addition, the strict liability doctrine is not inconsistent with admiralty law, which contains numerous strict liability rules and regulations. Thus, the Longshore and Harbor Workers' Compensation Act is a strict liability plan where the employer is liable to the injured worker without regard to negligence (*Jones & Laughlin Steel Corp. v Pfeifer,* 462 US 523, 528-529). The doctrine of unseaworthiness also imposes strict liability (*Seas Shipping Co. v Sieracki,* 328 US 85, 94) and Federal pollution laws applicable to vessels also apply strict liability principles (*see, Gravatt v City of New York, supra,* 1998 US Dist LEXIS, at * 37-38, 1998 WL, at 14 and discussions therein).

Since the public policy of this State is the use of the strict liability doctrine to protect workers in the construction field, and there would be no inconsistency with the objectives of the Federal law, the strict liability provisions of the New York Labor Law (§ 240 [1]) are not preempted.

Accordingly, the order of the Supreme Court, Bronx County (Barry Salman, J.), entered October 27, 1997, which, *inter alia,*

granted defendants' motion to dismiss the complaint, should be reversed to the extent appealed from, on the law, without costs or disbursements, defendants' motion for summary judgment denied and the complaint reinstated.

ROSENBERGER, J. P., MAZZARELLI, ANDRIAS and SAXE, JJ., concur.

Order, Supreme Court, Bronx County, entered October 27, 1997, reversed to the extent appealed from, on the law, without costs or disbursements, motion by defendants to dismiss the complaint denied and the complaint reinstated.